AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
U.S. District Court
District of Kansas

# UNITED STATES DISTRICT COURT

for the

District of Kansas

MAY 3 0 2019

Clerk, U.S. District Court
By_____ Deputy Clerk

In the Matter of the Search of:
*(Briefly describe the property to be searched or identify the
person by name and address)*
930 N. Yale Avenue, Wichita, Kansas 67208, is a single story residential
home, located on the northeast corner of Yale Avenue and Mossman Street.
The RESIDENCE has a detached garage, located on the east side of the
residence, and a detached shed in the backyard, which is on the north side of
the property. See Attachment "A", photographs of property to be searched.

}
}
}
}
}
}
}

Case No. 19-6087-GEB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under
penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property
to be searched and give its location):*
930 N. Yale Avenue, Wichita, Kansas 67208, is a single story residential home, located on the northeast corner of Yale Avenue
and Mossman Street. The RESIDENCE has a detached garage, located on the east side of the residence, and a detached shed in
the backyard, which is on the north side of the property. See Attachment "A", photographs of property to be searched.

located in the **DISTRICT OF KANSAS**, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

✓ evidence of a crime;

✓ contraband, fruits of crime, or other items illegally possessed;

✓ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841 and 846 | Possess with Intent to Distribute/Conspiracy to Distribute Controlled Substances |
| 21 USC § 843(b) | unlawful use of a communication device to facilitate a drug trafficking crime |
| 18 USC §§ 922 and 924 | Felon in possession of a firearm/Possess in furtherance of a drug trafficking crime |

The application is based on these facts:

See Attached Affidavit

✓ Continued on the attached sheet.

☐ Delayed notice of_____days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA CAMERON HEATH, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____5/30/19 @ 4:39 p.m.____

_____
*Judge's signature*

City and state: Wichita, Kansas

HONORABLE GWYNNE E. BIRZER, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT "A"

PHOTOGRAPHS OF REAL PROPERTY TO BE SEARCHED







## ATTACHMENT "B"

ITEMS TO BE SEIZED

The following are descriptions of the property or items to be seized:

1.    Indicia of occupancy, residency, and/or ownership of the premises;

2.    Unknown quantity of marijuana

3.    Any other illicit drug(s)

4.    Packaging material, scales and paraphernalia used in the illicit sales of marijuana and any other illicit drug(s)

5.    U.S. cash or currency;

6.    Digital devices and media used in the commission or furtherance of the aforementioned criminal offenses and/or evidencing, related to, or referencing the commission of the aforementioned criminal offenses. Digital device(s) includes, but is not limited to desktop computers, laptop computers, notebook computers, electronic tablets, cellular telephones, and surveillance equipment. This search warrant authorizes the off-site forensic examination of these items for evidence associated with the crimes described in the affidavit.

7.    Firearms and ammunition used in connection with the sale of marijuana

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | )  | |
|---|---|---|
| **IN THE MATTER OF THE SEARCH OF** | ) | |
| **THE PREMISES OF** | ) | CASE NO. 19-6087-GEB |
| **930 N. YALE AVENUE** | ) | |
| **WICHITA, KANSAS 67208** | ) | |
| | ) | |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Cameron Heath, Special Agent for the Federal Bureau of Investigation, being duly
sworn, state the following:

### INTRODUCTION

1.     This Affidavit is offered in support of an Application for a search warrant for the
search of the premises of 930 N. Yale Avenue, Wichita, Kansas 67208 (hereinafter
"RESIDENCE"). Three photographs of the RESIDENCE are provided in Attachment A. The
items that are the subject of the search and seizure applied for in this Affidavit are more
specifically described in Attachment B.

2.     On May 17, 2019, Federal District Court Judge, John W. Broomes, of the District
of Kansas, signed a Title III Order, under case number 19-CM-60013-JWB, which authorized
agents of the FBI and other law enforcement personnel, under the direction of the FBI, the
authority to intercept wire communications (phone calls) to and from two cellular telephones
used by Dorzee Hill (HILL). The first phone number is (316) 928-6363 (hereinafter referred to as
**Target Telephone 1**), which is a phone number serviced by T-Mobile USA. The second phone
number is (316) 272-6628 (hereinafter referred to as **Target Telephone 2**), which is a phone
number serviced by Verizon Wireless. The Title III Order authorized law enforcement personnel

to intercept wire communications to and from **Target Telephone 1** and **Target Telephone 2** regarding the following federal offenses: possession of a controlled substance with intent to distribute, and distribution of a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy and attempt to possess with intent to distribute and distribution of a controlled substance, in violation of Title 21, United States Code, Section 846; and unlawful use of a communication facility to commit and facilitate the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); possession of a firearm by a convicted felon in violation of Title 18, United States Code, Section 922; possession of a firearm during and in relation to and in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924; and monetary laundering offenses under Title 18, United States Code, Sections 1956 and 1957.

      3.     Based on my training and experience, and the facts set forth in this Affidavit, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law are located within the RESIDENCE. I am requesting authority to:

      a.   Search the entire RESIDENCE;

      b.   Open and search all compartments and/or containers (locked, sealed, or otherwise) within the RESIDENCE where the items specified in Attachment B may be found;

      c.   To seize and/or examine all items listed in Attachment B as evidence, fruits, and instrumentalities of criminal activity.

      4.     I have been a Special Agent (SA) of the Federal Bureau of Investigation (FBI) since September, 2015, and I am currently assigned to the Kansas City Division, Wichita Resident Agency (WRA) of the FBI. I am specifically assigned to the Safe Streets Task Force

(SSTF).  As a FBI Special Agent assigned to the SSTF my official duties include, but are not limited to investigation into gangs, criminal violations of the Controlled Substances Act, organized crime, and ongoing criminal enterprises.  During my time as a FBI Special Agent, I have participated in numerous gang and controlled substance violation investigations.  While conducting the investigations, I have authored T-III affidavits, pen registers, Global Positioning System (GPS) cellular telephone tracking warrants, and social media warrants.  I have conducted extensive interviews, controlled narcotics purchases, surveillances, search warrants and arrest warrants.  My training and experience have involved, among other things, (a) the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealment of proceeds of drug trafficking; (b) surveillance; and (c) analysis of documentary and physical evidence. Based on my training and experience as a FBI Special Agent, I have become familiar with the manner in which narcotics traffickers conduct their drug-related businesses, including the methods employed by narcotics dealers to import and distribute narcotics, and their use of coded language to refer to narcotics, drug proceeds, and other aspects of narcotics trafficking.  I have been personally involved in numerous investigations involving the unlawful possession, manufacture, distribution, and smuggling of controlled substances.

     5.    The information in this affidavit is information known to me as a result of my participation in this investigation or is information that has been communicated to me by witnesses or other law enforcement personnel involved in this investigation.

## DESCRIPTION OF PROPERTY

6.      The premises of 930 N. Yale Avenue, Wichita, Kansas 67208, is a single story

residential home, located on the northeast corner of Yale Avenue and Mossman Street. The

RESIDENCE has a detached garage, located on the east side of the residence, and a detached

shed in the backyard, which is on the north side of the property. There are three known points of

entry to the residence. The point of entry that investigators observed HILL used during this

investigation is on the west side of the residence, which is where a black mailbox is attached to

the RESIDENCE. A second door is located on the south side of the RESIDENCE and a third is

on the east side the RESIDENCE.  The main door appears to be all wood and white in color. The

numbers "930" are directly above the main door. In addition, there appears to be at least one

surveillance camera on the west side of the RESIDENCE.

## PROBABLE CAUSE

7.      On May 23, 2019, investigators were monitoring wire communications on **Target

Telephone 1** and **Target Telephone 2**. At 7:20 p.m., session 4688, and on **Target Telephone 1,**

HILL received a phone call from an unknown male (UM). During the call, HILL asked the

unknown male, "Member that other thing you was talkin' bout?" The UM asked HILL, "The

greenery?" HILL replied, "Yep, yep, yep, yep, yep." HILL then tells the UM "Man, I need one,"

and then tells the UM to "hold on." HILL then handed **Target Telephone 1** to Derek Hubbard

(HUBBARD), a/k/a "BO PEEP" or "BO," who then began talking to the UM. During the UM

and HUBBARD's conversation, HUBBARD asked the UM if he had any "Tree." The UM told

HUBBARD that he did but he would "wanna try that shit." HUBBARD then asked the UM, "It

ain't all that? It's just, what, some mediocre?" The UM responded, "Naw, it's good though…It

ain't, it ain't like the Gorilla Glue, thought. Put it like that." HUBBARD replied, "Oh, alright."

HUBBARD then asks, "What's the ticket?" The UM told HUBBARD, "Shit, I'll do, I'll do, I mean, shit, to get you cool, shit. They done hit me 15 for these mother fuckers." I mean, I'll give you one of 'em for 15 just because, get you cool." HUBBARD then told the UM, "Have someone uh, somebody pull up on us, so I can check it out." The UM told HUBBARD to pull up on his brother "Punch." The UM then asked HUBBARD, "What you said, the whole mother fucker?" HUBBARD replied," Aw, no, I don't need. Naw, I can just get a QP or somethin', just to hold me for a few days." HUBBARD, for a second time, asked the UM, "What's the ticket?" The UM later replied to HUBBARD's question about the ticket, by stating, "Alright, I'll make it, I got you. I'll make it right when you get here." HUBBARD replied, "Alright."

8.      Investigators believe the purpose of the aforementioned phone conversation was HUBBARD was looking to purchase marijuana from the UM and his brother, "Punch," as when HUBBARD asked the UM if he had any "Tree," investigators know that "Tree" is slang for marijuana. Initially, when the UM told HUBBARD that he would give him a "whole one" for "15," investigators believe that the UM was going referring to one pound of marijuana and that he would sell one pound of marijuana to HUBBARD for $1,500. Based upon training and experience, I believe that $1,500 for one pound of marijuana, is consistent with the approximate going rate for one pound of marijuana in the Wichita, KS area. Also, during the conversation, when HUBBARD told the UM that he didn't need a "whole one," he just needed a "QP" to hold him over for a few days, investigators believe that HUBBARD was referring to a quarter pound of marijuana. At the time of this phone call, investigators were unsure on where "Punch" was at and where HUBBARD had went to meet the UM and PUNCH.

9.      On May 23, 2019, at 8:42 p.m., and while monitoring wire communications to and from **Target Telephone 1** and **Target Telephone 2**, investigators intercepted an incoming

call, session 4715 on **Target Telephone 1**. The incoming call was from (316) 200-1541 and it was from the same UM during session 4688. HILL answered the call from the UM and then gave **Target Telephone 1** to HUBBARD. During the call HUBBARD told the UM, "There was only one good one in there," followed by the UM stating, "I know that's, yeah the gorilla." HUBBARD later told the UM, "I ain't trippin, I just needed something to hold me for a couple days anyway." The UM then stated, "Naw, that, naw that shit good though. You gonna (unintelligible) that's why I made sure I got you one and one in case you keepin one for you just to smoke. That other shit just sell it cuz I got like nine Ki's of this shit just a minute ago." HUBBARD then told the UM, "Man, uh, they was a little short. All of them about two grams short but I ain't trippin. Just make sure your people keepin, I ain't even trippin."

10.     Investigators believe the purpose of the aforementioned phone call was the UM was calling to see what HUBBARD thought of the marijuana he had sold him. Investigators believe that when HUBBARD and the UM were referencing "gorilla glue," they were referring to high grade marijuana, as "gorilla glue" is slang for marijuana with high THC levels. Also, during the call, when HUBBARD told UM "Man, uh, they was a little short. All of them about two grams  short but I ain't trippin," investigators believe that HUBBARD was telling the UM that each ounce of marijuana HUBBARD had purchased, was approximately 2 grams short. Investigators believe that HUBBARD had purchased 4 ounces (quarter pound) of marijuana, as HUBBARD had told the UM in session 4688 he just needed a "QP." In addition, when the UM had referenced just getting "nine Ki's," investigators believe the UM was telling HUBBARD that he had just obtained 9 kilograms or approximately 19.8 pounds of marijuana.

11.     On May 24, 2019, law enforcement personnel were monitoring wire communications on **Target Telephone 1** and **Target Telephone 2**. At 8:28 p.m., session 4814,

investigators intercepted an outgoing call, while HILL was using **Target Telephone 1**. HILL

had called phone number (316) 200-1541 and spoke with the same UM from sessions 4688 and

4715. During the phone call, HILL told the UM that "Somebody wanna holla at you fam," at

which point HILL handed the phone off to a male who identified himself to the UM as Tony

Shaw (SHAW). After SHAW had briefly spoke to the UM, SHAW told the UM that "Dorzee"

wanted to tell him something. HILL then asked the UM, "You know that ting BO was doin

yesterday?" The UM acknowledged that he did, followed by HILL telling the UM, "Your homie

tryin to do two of 'em." The UM then asked HILL, "Ight. The homie right there? Alright." HILL

then later handed the phone back to SHAW. The UM told SHAW, "Hey, yeah, you hear, uh, go

over to my brother's and then uh, fuck, try this shit out, make sure that you like then go ahed and

fuck with my brother." SHAW then asked the UM, "What's the address?" The UM then told

SHAW, "930 North Yale, bro." SHAW then asked the UM, "Hold on, wait a minute, next

question. So for the half a elbow is how much?" The UM then told SHAW, "I'll do it to ya for

seven nigga." SHAW then told the UM, "Hey man, you betta tell them niggas man, that I'm a

real nigga and don't be bullshittin me." The UM replied, "Man, that's my little brother, Punchy.

Nigga what the fuck you talkin about?" The UM later told SHAW, "I'm finna tell him bro…I'm

sending my homie over there..." SHAW responded, "Well, you ain't out, so you don't…I'd come

fuck with you."

12.     Investigators believe that the purpose of the aforementioned phone call was HILL

was facilitating a drug transaction between SHAW and the UM, as HILL had made reference to

the drug transaction between the UM and HUBBARD the previous day. Investigators believe

that the transaction between the UM and SHAW was for one half pound of marijuana, as SHAW

had asked how much for "half a elbow," which investigators are aware that an "elbow" is slang

for one pound. Also, when the UM told SHAW, "I'll do it for ya for seven nigga," the UM was telling SHAW he would charge him $700 for one half pound of marijuana. In addition, investigators believe that SHAW went to 930 N. Yale, Wichita, KS, to purchase the one half pound of marijuana from the UM's brother, PUNCHY, as said address was provided to SHAW by the UM, and the UM made reference that his brother PUNCHY would be there and would meet with SHAW.

13.     On May 25, 2019, at 1:50 p.m., investigators intercepted an outgoing phone call on **Target Telephone 2**, which was session 478. HILL had called phone number (316) 761-2289, which is a number used by Trey Martin. During the phone call, MARTIN told HILL that he was looking to by some "Good," and that it was "hard to get some in town." HILL then told MARTIN, "I got it. I know where some at. I can get you some right now." MARTIN asked HILL, "How much is it though?" HILL replied, "Man, I can get a what's her name for 18 or some half of that for 9. I can get you some." MARTIN then told HILL, "Yep, I need some. I need a whole one." HILL responded, "Alright, let me uh, let me make a call. I can get you some. I had to get BO and them some the other day."

14.     Investigators believe the nature of the aforementioned phone call was MARTIN was telling HILL that he needed some "Good," which is another slang term that is used to describe high grade marijuana. Also, when HILL mentioned the number "18" and "9," HILL was referencing that it would cost approximately $1,800 for a pound and $900 for one half pound, and when MARTIN told HILL he wanted a "whole one," MARTIN was informing HILL that he wanted one pound of marijuana. In addition, when HILL told MARTIN "I can get you some. I had to get BO and them some the other day," investigators believe that HILL was referencing

when he facilitated the sales of marijuana for HUBBARD and SHAW, with the UM and "PUNCHY."

15.     On May 25, 2019, at 1:54 p.m., session 480, investigators intercepted an outgoing phone call on **Target Telephone 2**. While using **Target Telephone 2**, HILL had called "PUNCHY," at (316) 670-2268. During the phone call, HILL asked PUNCHY, "Aye, you know the homie that came thru there yesterday?" PUNCHY replied, "Uh huh," followed by HILL asking "Tone, you know what he came, what he came for? You still got some wit you?" PUNCHY replied, "Yeah." HILL then told PUNCHY, "Let me get two of them." PUNCHY informed HILL, "But you understand it ain't $700." HILL then asked, "What is it?" PUNCHY replied, "The ticket is a band."

16.     Investigators believe the purpose of the aforementioned phone call was HILL was calling PUNCHY, for MARTIN, and was checking to see how much PUNCHY would charge for one pound of marijuana, as on May 24, 2019, SHAW had purchased one half pound of marijuana from PUNCY, at the RESIDENCE and SHAW was charged $700. During the call between HILL and PUNCHY, HILL told PUNCHY, he wanted to get "Two" what "Tone" had gotten the previous day. Also, during the call, when PUNCHY told HILL he wouldn't be able to get the rates as SHAW did, as PUNCHY was going to charge HILL at a rate of $1,000 per one half pound of marijuana rather than the $700 rate SHAW had received the previous day. In addition, based upon training and experience, investigators know that a "band" is slang for $1,000.

17.     On May 25, 2019, at 2:32 p.m., investigators intercepted an incoming call on **Target Telephone 2**, which was session 487. The phone call was from MARTIN, who had called from phone number (316) 761-2289. During the call, MARTIN asked HILL, "What up, did you get that for me?" HILL replied, "Right," followed by MARTIN asking, "The Reds? I

mean, not the Reds but the KUSH?" HILL then stated, "Yeah, I can get it. What you want to do?" MARTIN told HILL, "Yep, I'm, I'm ready" HILL then informed MARTIN, "Alright, here I come."

18.     Investigators believe the purpose of the aforementioned phone call between MARTIN and HILL, was MARTIN was asking HILL if he had obtained the marijuana for him, as MARTIN had asked HILL, if he had gotten the "KUSH." Based upon training and experience, I know "KUSH" to be a slang term for marijuana.

19.     On May 25, 2019, at approximately 2:41 p.m., and while watching pole camera surveillance of HILL's residence, located at 2320 E. 24th Street, Wichita, KS, SA Heath observed HILL depart his residence on foot and walk in a southeast direction. HILL was wearing a white T-Shirt and blue jeans.

20.     On May 25, 2019, at 2:44 p.m., investigators intercepted an outgoing call on **Target Telephone 2**, which was session 488. HILL had called MARTIN, at (316) 761-2289. During the phone call, HILL told MARTIN, "Bring it out here." MARTIN replied, "Alright, here I come."

21.     Investigators believe the purpose of the phone call was HILL had walked to MARTIN's residence, which investigators believe to be 2444 N. Grove Street, Wichita, KS, which happens to be an approximate 2 minute walk from HILL's residence, and obtain money from MARTIN, so that HILL could purchase one pound of marijuana from PUNCHY.

22.     Following the above phone call between HILL and MARTIN, investigators initiated surveillance at the RESIDENCE. At approximately 2:52 p.m., investigators observed HILL park in the driveway at the RESIDENCE. HILL was driving his black Mercedes sedan, bearing KS dealer tag D1647K. Also, at the same time investigators observed HILL park in the

driveway of the RESIDENCE, investigators intercepted an outgoing phone call from **Target Telephone 2**, which was session 489. During said phone call, HILL had called PUNCHY at phone number (316) 670-2268, and upon PUNCHY answering HILL's phone call, PUNCHY told HILL, "I see you bro." Investigators believe the purpose of HILL calling PUNCHY was to tell PUNCHY that he was at the RESIDENCE and investigators believe PUNCHY monitors surveillance video that had been located on the west side of the residence, as PUNCHY had seen HILL before HILL had approached the RESIDENCE.

23.     On May 25, 2019, and at approximately 2:59 p.m., HILL was observed exiting the RESIDENCE and departing the area. HILL was driving the black Mercedes and was followed to 2444 N. Grove Street, where HILL was seen exiting the Mercedes, and walking in the front door of 2444 N. Grove Street, which was at approximately 3:06 p.m.

24.     On May 25, 2019, at 3:07 p.m., investigators intercepted an outgoing call on **Target Telephone 2**, which was session 492. HILL had called PUNCHY at phone number (316) 670-2268. During the phone call, HILL told PUNCHY, "Bro, they don't even want it." PUNCHY replied, "Uh, okay. God damn it." HILL informed PUNCHY, "He said it got seeds in it or some shit." PUNCHY then told HILL, "Bring it back," followed by HILL stating, "I'm on my, I'm on my way back." Investigators believe the purpose of said phone was that when HILL took the marijuana to MARTIN, MARTIN decided that the marijuana wasn't any good because "it had seeds in it."

25.     On May 25, 2019, and at approximately 3:15 p.m., surveillance units observed HILL arrive at the RESIDENCE, followed by HILL departing the RESIDENCE at approximately 3:17 p.m.

26.     Based upon my training and experience, I am aware that individuals involved in drug trafficking deal in cash, which they frequently keep on-hand or in a secure location, such as their home and/or any outbuildings located on the property of the RESIDENCE. Furthermore, as the affiant has wrote hereinabove, investigators are aware that individuals such as SHAW and HILL have traveled to the RESIDENCE to purchase marijuana, in weights of pound increments.

27.     Also, based upon my training and experience, I am aware that individuals involved in drug trafficking regularly communicate with their co-conspirators, their sources of supply, and their customers via cellular telephones, and that these phones are frequently in close proximity to the traffickers. Additionally, individuals involved in drug trafficking will frequently make use of other internet-based services and internet-connected devices for the purpose of communicating with co-conspirators, their sources of supply and their customers. In this case, investigators know that as a result of a court order, which has authorized the FBI to intercept phone calls to and from HILL's phones, which are **Target Telephone 1** and **Target Telephone 2.** Investigators have learned during this Title III investigation that communication facilities have been used to facilitate the sales of illegal narcotics at the RESIDENCE.

28.     Furthermore, based on my training and experience, I know that drug traffickers possess firearms for the purpose of protecting themselves and their product, while being involved in the illicit sales of narcotics.

## CONCLUSION

29.     Based upon the above statements, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1); conspiracy and attempt to possess with intent to distribute and distribution of a controlled substance, in violation of Title 21, United States Code, Section 846; and unlawful use of a communication facility to commit and facilitate

the commission of drug trafficking offenses, in violation of Title 21, United States Code, Section 843(b); possession of a firearm during and in relation to and in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924; and monetary laundering offenses under Title 18, United States Code, Sections 1956 and 1957 have been committed and that evidence, fruits, and instrumentalities of these offenses, more specifically described in Attachment B, are located within the RESIDENCE.

30.     I respectfully request this Court issue a Search Warrant for the premises of the RESIDENCE and authorizing:

a.  A search of the entire RESIDENCE;

b.  The opening and searching of all compartments and/or containers (locked, sealed, or otherwise) within the RESIDENCE where the items specified in Attachment B may be found; and

c.  The seizure and/or examination of all items listed in Attachment B as evidence, fruits, and instrumentalities of criminal activity.


Cameron Heath
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this _30th_ day of May, 2019.

HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge
District of Kansas